UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

CASE NO.: 5:11-CV-00666

LARRY GIVENS and TRINA MITCHELL, on behalf
of themselves and all others similarly situated,

      Plaintiffs,

v.

VAN DEVERE, INC.,

      Defendant.

_____/

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

PLAINTIFFS, LARRY GIVENS and TRINA MITCHELL, on behalf of themselves and all

others similarly situated, through their undersigned counsel, move the court pursuant to Federal Rule

of Civil Procedure 23 for entry of an order certifying the following classes:

### 1. The TILA General Class & Subclass

A.    All persons within the applicable class period who have signed a retail installment sale contract (RISC) prepared by defendant and whose signatures were also obtained by defendant on a form entitled "Conditional Delivery Agreement" or similar provision purporting to give defendant the ability to revoke the RISC under certain circumstances.

B.    A subclass of certain persons who belong to the general class described above who were subsequently contacted by the defendant and required to sign a new retail installment sale contract with different terms.

### 2. The ECOA Class

C.    All persons within the applicable class period who have signed a RISC prepared by defendant and whose signatures were also obtained by defendant on a form entitled "Conditional Sales Agreement" or similar provision purporting to give defendant the ability to revoke the RISC under certain

- 1 -

circumstances and who were not provided a written adverse action notice by defendant pursuant to 15 U.S.C. §§1691, et seq., and Regulation B.

### 3. The Ohio Consumer Sales Practices Act (OCSPA) Class

D.    All persons within the applicable class period who have signed RISC prepared by defendant and whose signatures were also obtained by defendant on a form entitled "Conditional Sales Agreement" or similar provision purporting to give defendant the ability to revoke the transaction RISC under certain circumstances.

### 4. The U.C.C.

F.    All persons within the applicable class period who have signed a RISC prepared by the defendant and whose signatures were also obtained by defendant on a form entitled "Conditional Delivery Agreement," whose purchased vehicle was repossessed by defendant but received no notices pursuant to ORC §1309.601, et seq.

The size of each class is limited only by the applicable statutes of limitations, i.e., one year for TILA, 15 U.S.C. §1640(e); two years for the ECOA, 15 U.S.C. §1691e(f); two years for the OCSPA. The defined classes are estimated to each number at least 500 members. Plaintiffs allege that the class period under TILA began in April, 2010, the ECOA and the OCSPA claims began in April 2009, two years prior to the date of filing this complaint. Each class period closes as of the date of class certification.

1.    The prerequisites to class certification set out under Rule 23 are met. The class members are so numerous -- estimated at numbers exceeding five hundred for each class – that separate joinder is not practicable. The claims of the class representatives raise questions of law and fact common to and typical of the claims of each member of each class, and the class representatives will fairly and adequately protect the interests of the other members of the classes. Since the expense and burden of individual litigation effectively makes it impossible for individual class members to

- 2 -

seek redress for the wrongs alleged herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

2.      Common questions of law and fact exist as to all members of each class and predominate over any questions affecting individual members of each class.  Some of the questions of law and fact common to each member of each class include:

a.      Whether defendant's conduct alleged in Count I violates TILA at §1601(a), §1638(a), Reg. Z, §226.17, §226.18, by claiming it is not a creditor and by  providing meaningless credit terms.

b.      Whether defendant's conduct alleged in Count II violates the ECOA.

c.      Whether defendant's conduct alleged in Count III violates the OCSPA.

d.      The measure of actual and statutory damages available to the plaintiffs and to the putative classes for defendant's wrongful conduct under TILA, the ECOA, the OCSPA and the U.C.C.;

e.      Whether defendant's alleged acts and practices should be declared as violations of TILA, the ECOA, and the OSCPA and be permanently enjoined.

3.      In addition, pursuant to Rule 23, the prosecution of separate claims or defenses by or against individual members of the classes would create a risk of inconsistent or varying adjudications concerning individual members of the classes which would establish incompatible standards of conduct for defendant and create a risk of individual adjudications which would be dispositive of the interests of other members of the classes who are not parties to the adjudications, or substantially impair or impede the ability of other class members who are not parties to the adjudications to protect their interests.

- 3 -

4.      Furthermore, defendant has acted or refused to act on grounds generally applicable (actually almost identically) to all members of each class, thereby making final injunctive relief and declaratory relief concerning the class as a whole appropriate under Rule 23(b)(2).

5.      The questions of law or fact common to plaintiffs and the claims of class members, being virtually identical, predominate over questions of fact, if any, affecting only individual members, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to Rule 23(b)(3).

6.      The names and addresses of class members may be ascertained from the books and records of defendant and through publication in various news media.  Notice can then be provided to such persons using techniques and a form of notice similar to those customarily used in class actions brought under the federal securities laws and the federal antitrust laws.  The claims alleged in the complaint would be readily manageable as a class action.

7.      The names and addresses of class members may he ascertained from the books and records of Van Devere, Inc. and through publication in various news media. Notice can then he provided to such persons using techniques and a form of notice similar to those customarily used in class actions brought under the federal securities laws and the federal antitrust laws. The claims alleged in the complaint would be readily manageable as a class action.

## A.      Certification Pertaining to this Case

"In determining whether a class action will be allowed, the substantive allegations of the complaint should be taken as true.  See, *Blackie v. Barrack*, 524 F.2d 891, 901 n. 16 (9th Cir. l975), *cert. denied,* 429 U.S. 816 (1976); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989); *Sharif by Salahuddin v. New York State Educational Department*, 127 F.R.D. 84,

87 (S.D.N.Y. 1989) and, Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  A 'court may not consider the merits of the action in determining whether to grant plaintiff's motion for class certification."  See *Ottis v. Shalala*, 1993 U.S. Dist. LEXIS 13528, *5 (W.D. Mich. 1993).

The Court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing.  See, *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969); *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977); and *King v. Kansas City Southern Industries*, 51 9 F.2d 20, 25-26 (7th Cir. 1975).

Congress expressly recognized the propriety of a class actions under TILA by providing special damage provisions in 15 U.S.C. §1640(a)(2)(B). This is a prototypical case for class certification.  Prohibitive litigation costs effectively prevent individuals from filing complaints to recover their claims, and to require thousands of separate suit to recover the sums involved against Defendant would result in an unnecessary multiplicity of suits or would result in no remedy at all as it would geometrically increase litigation expenses.

In this case, the complaint alleges a compelling case for class certification. The procedure that caused injury to the Plaintiffs and to the classes and sub-classes is the same for each of them. The law is the same, the damage formula is the same, and the class as a whole is entitled to declaratory and injunctive relief.

## B.    The Requirements of Rule 23(a) are satisfied.

Rule 23(a) sets forth four criteria which must he met in **order** to certify a class. A class is properly certified if: (1) the members of the class are so numerous that separate joinder of each member is impracticable; (2) there are questions of law or fact common to the class; (3) the class

representative's claims are typical of those of the class; and (4) the representative party will fairly and adequately protect and represent the interests of the class. This case satisfies all of these criteria.

### 1.    Numerosity (Joinder of Individuals Impractical)

Class certification is appropriate in cases where, as here, the members of the class are so numerous that joinder of them all would be impracticable. At the time of the transactions described herein, Defendant operated a substantial new and used car dealership which sells and finances motor vehicles in numbers approaching 90 each month and in each of those deals Defendant's financing procedure is the same as in the Plaintiffs' transaction. Significantly, here, the number of class members exceeds the minimum necessary. Named Plaintiffs herein formulated and served written interrogatories on Defendant many months ago seeking specific numerical information as to each of these classes and sub-class in order to support its current assertion with regard to civil rule 23(a). Defendant stalled and managed to drag its feet in supplying the requested numerical information which lead to a discovery dispute.   Magistrate Logan ordered that this information he provided on or before October 15, 2009.  However, Judge Hogan, upon consideration of named Plaintiffs' dispute the it needed specific numerical data from Defendant in order to file the within motion, disagreed with undersigned counsel. Instead, he wrote the following:

> "Plaintiff has generated enough probable cause to believe that the numerosity requirement can be satisfied    Since it is quite likely that the documents are standard forms used *by* the Defendant dealership in its daily business and that Defendant has sold a number of automobiles using the documents, there is no reason to delay the filing of a motion for certification of the case as a class action. One does not need the data to the extent suggested by Plaintiff to satisfy rule 23 or rule ii." [Doe. 17].

There is no predetermined size for a proper class; "the number of members of the class alone is not dispositive . . . it is more the practicalities of the circumstances which govern ... further,

- 6 -

'impracticability' does not mean 'impossibility.'"  See *Samuel v. University of Pittsburgh*, 56 F.R.D. 435, 439 (W.D. Penn. 1972).  There is no minimum number, which will he determinative. See *Cash v. Swifton Land Corp.*, 431 F.2d 569 (6th Cir. 1970).  Plaintiffs need only show it would be difficult or inconvenient to join all the members of the class. See *3B Moore's Federal Practice*, §2305(3) at 23-156 (1987). See also, *Ball v. Wagers*, 795 F.2d 579, 581 (6th Cir. 1986); *Gradisher v. Check Enforcement Unit, Inc. ("Gradisher"),* 203 F.R.D. 271, 276 (W.D. Mich. 2001).  Further, '[i]mpracticable does not mean impossible." See *Iron Workers Local Union No. 17 And Its Trustees v. Phillip Morris Incorporated*, 182 F.R.D. 523, 531 (N.D. Ohio 1998) See also *Rabidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "When the class is large, numbers alone are dispositive. . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  Where the class numbers 25 or more, joinder is usually impracticable.  See *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D. Ill. 1994) (24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, *supra*, 113 F.R.D. 60,62 (N.D. Ill. 1986) (10-29 sufficient); *Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); and, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).

A determination of practicability should depend upon all circumstances surrounding the case. See *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968). Thus, the numerosity requirement should not be read so strictly as to defeat certification where surrounding circumstances indicate a need for class treatment. A plaintiff's burden is to show only that there are grounds to believe that the numerosity requirement is satisfied.  See *Senter v. General Motors Corp.*, ("Senter"), 532 F.2d 511,

523 (6th Cir. 1976), *cert. denied,* 429 U.S. 870 (1976) (reasonable inferences can be drawn by the court).  A factual showing of the exact number of class members is not necessary. In cases asserting violations of federal rights, "the numerosity requirement is usually satisfied *by* the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims.' See *Weathers v. Peters Realty Corp.*, 499 F2d 1197, 1200 (6th Cir. 1974); and *Doe v. Flowers*, 364 F.Supp. 953 (NE). W. Va. 1973), *aff'd*, 416 U.S. 922 (1974). "The court may make common sense assumptions in order to find support for numerosity." *In Re: One Bank Corp. Securities Limitation*, 136 F.R.D. 526 (D. ME 1991).  Impractical means difficulty or inconvenience in joining all members of the class. In *Re: Alexander Grant & Co. Litigation,* 110 F.R.D. 528 (S.D. Fla. 1986). Moreover, Professor Miller has indicated that "[i]f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule * * *." *See 7A Wright, Miller & Kane, Federal Practice and Procedure* (2 Ed. 1986), 51760 at 22. See *also Newberg, Newberg on Class Actions,* §305 at 3-25 (3rd ed. 1992); and *Stewart v. Slaughter*, 165 F.R.D. 696 (M.D. Ga. 1996).

In the instant case, joinder of all members is impractical. Defendant's own witness Robinson has already testified that there were "probably 100" re-contracts out of 1000 contracts and that is only a sub-class of the general class of consumers asserted herein [Robinson depo. P. 71].

## 2.  Commonality

Fed. Civ. Rule 23(a)(2) requires that members of the class have questions of law or fact in common.  See *Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976), cert. *denied,* 429 U.S. 870 (1976). Plaintiffs allege both common questions of law and common questions of fact,

although both need not be shown to satisfy the rule. That "each individual member of the class has a unique situation and has been affected in diverse ways" by the acts at issue does not preclude a finding of commonality. See *Sweet v. General Tire & Rubber Co.*, 74 F.R.L. 333 (ND. Ohio 1976). Commonality exists where, as here, the members of the class are affected by a general practice or policy of the Defendant. See *Senter v. General Motors Corp.*, 532 F.2d at 524); where Plaintiffs' claims stem from the same course of conduct which gives rise to the class claims. See Morgan v. Laborers' Pension Trust Fund, 81 F.R.D. 669, 671 (N.D. Cal. 1979)); or where Plaintiffs' claims are based on the same legal theory as the rest of the class. See *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir. 1975)).

In this case, the common questions of fact include whether Defendant routinely engages in the practice of making illusory credit disclosure for which it is never bound in violation of TILA and its failure to ever provide notices of adverse action as a creditor is required to do under the ECOA. Common questions of law include: whether the practices of Defendant violate the Truth-in-Lending Act, the ECOA, and the Ohio Consumer Sales Practices Act (OCSPA). These central issues sufficiently demonstrate the commonality necessary for class certification. See *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976), *cert. denied,* 429 U.S. 670 (1976). The threshold for commonality is not high. See *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468 (5th Cir. 1986). In order to satisfy the commonality test, Plaintiffs must merely establish a common claim arising from the same practice or course of conduct; "that resolution of the common questions affect all or a substantial number of the class members." *Id.* at 472. "It is not necessary, however, that the legal claims he identical. No qualitative or quantitative test will determine commonality. It is only necessary to find at least one issue common to all class members." See *C.V. Reit, Inc. v. Levy,* 144

- 9 -

FED. at 696. ("The commonality requirement is satisfied where questions of law refer to standardized conduct by Defendants toward members of the proposed class."). Here, all of the Class members' claims arise from Defendant's consistent and virtually identical course of misconduct and are based upon identical legal theories.  Plaintiff's claims for damages are based upon Defendant's practices which are violative of the TILA, the ECOA, the OCSPA, and the U.C.C. Questions of law or fact common to all members and which predominate over any individual issues include, but are not limited to the following: 1) Whether in the course of financing vehicles it sold to its customers, it was the Defendant's practice to reject its status of creditor yet prepares a retail installment contract and obtains the buyers' signature on it and on a waiver/revocation form of its creation which purports to relieve the Defendant from its obligations under TILA and the RISC itself;  (2) Whether in the course of financing vehicles sold to its customers (named Plaintiffs and the class), it was the Defendant's practice to reject any status of creditor, deny or reject its customers' credit applications, reject credit after issuing the RISC, then fail to issue adverse action notices under the ECOA;  (3) The measure of damages available to members of each Class for the Defendant's wrongful conduct. The commonality requirement "does not require that all the questions of law or fact raised by the dispute be common," See *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir. 1996); though in this case they are. Rather, the "issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members." See *Kreuzfeld v. Carnehammar,* 138 F.R.D. 594, 599 (S.D. Fla. 1991). Common questions of law and fact, including but not limited to those described above, squarely confront the entire class. Consequently, the requisite commonality clearly exists under Rule 23. "[I]f the questions presented in a suit for injunction are grave and difficult, and the injury to the moving party will be irreparable if the relief is denied, while the

inconvenience and loss to the opposing party will be in considerable if the relief is obtained, the injunction should be granted." *Rutherford v. United States,* 429 F.Supp. 506, 512 (D.C. Ok. 1977).

**3.      Typicality**

The typicality requirement of Rule 23(a)(3) assures that the claims of the representative party are sufficiently similar to those of class members that the named Plaintiffs will adequately represent. Generally, Rule 23(a)(3) is satisfied where the claims "are based on the same legal remedial theory". See Wright and Miller, *7 Federal Practice and Procedure,* §1775 at 209 (Supp. 1982). Typicality does not mandate a precise identity of interests between the representative plaintiff and all class members; rather, it requires only a "sufficient nexus". See *Barnett v. W.T. Grant Co.,* 516 F.2d 543, 548 (6th Cir. 1975)); a "common element of fact or law". See *Senter v. General Motors Corp., supra,* at 525, n. 31 (6th Cir. 1975)); or a "coextensive interest".  See *Kaminski v. Shawmut Credit Union,* 416 F.Supp. 1119, 1123 (D. Mass. 1976)). There can be little question that the claims of the named Plaintiffs herein are typical of those of the class that they seek to represent. The named Plaintiffs have been subjected to Defendant's unlawful practices as alleged herein. Plaintiffs raise the same legal and remedial theories which would be raised by any class member. Under Rule 23(a)(3), a proposed class representative must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." See *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 157 (n.13 1982). The typicality requirement focuses simply on the nature of the claims alleged on behalf of the class. Generally the typicality requirement is satisfied it the claims of the named Plaintiffs have the same essential characteristics as the class at large.  See *Appleyard  v. Wallace,* 754 F.2d 955, 958 (11 Cir. 1985).  "The focus of

- 11 -

the typicality inquiry ... is not Plaintiff's behavior, but Defendants'." See *In Re: IGI Securities Litigation*, 122 F.R.D. 451, 45b (D. N.J. 1988) (citations omitted). In this case, the named Plaintiffs' claims and those of each member of the class are virtually identical for all purposes. Since Plaintiffs seek to prove that defendant committed the same unlawful acts using the same business practices against an entire class, all members of the class have identical claims. See *Kennedy v. Tallant*, 710 F.2d 711(11th Cir. 1983). "The claims of the named Plaintiffs arise out of the same legal theory as that of the proposed class members and so the Plaintiffs have met the typicality requirement of Rule 23(a)(3)."

      **4.     Adequacy of Representation**

Rule 23(a)(4) is satisfied when the named Plaintiffs show that their interests are not antagonistic to the other members of the class and that the named Plaintiffs are represented by counsel of sufficient diligence, experience and competence to vigorously litigate the class claims. Named Plaintiffs satisfy both these elements. Moreover, the more important inquiry is the competence, experience, and ability of class counsel to vigorously prosecute the action. See *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987). In this instance, Plaintiffs' counsel are experienced and fully qualified to represent the class. The Court may take judicial notice that both of Plaintiffs' counsel are particularly experienced in prosecuting consumer litigation. Once the case is certified, additional class counsel will be added for discovery and class settlement purposes.

      **5.     The Proposed Class Meets the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) provides:

      An action may be maintained as a class action if the prerequisites of

subdivision (A) are satisfied, and in addition: *** (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions effecting only individual members, and that a class action is superior to other available methods of a fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interested members of the class in individually controlling the prosecution of defense of separate actions; (h) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claim in the particular form; (d) the difficulties likely to be encountered in the management of a class action.

The "predominance" requirement looks to whether central issues in the case are sufficiently cohesive to permit generalized proof and common resolution. See *Amchem Products, Inc. v. Windsor* ("*Amchem*"), 521 U.S. 591, 117 S.Ct. 2231, 2246 (1997); *In Re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996); and *In Re Prudential Ins. Co. of America*, 962 F. Supp.450 ( D. N.J. 1997) *aff'd.,* 148 F.3d 283 (6th Cir. 1998). That individual questions exist does not defeat predominance so long as the common questions of law or fact are important issues in the case, which materially advance resolution of the case. *See Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998). The fact that sub-class members may suffer different amounts of actual damages does not mean that individual questions predominate over common questions.  See *Bremiller v. Cleveland Psychiatric Institute*, 898 F. Supp. 572 (ND. Ohio 1995). The United States Supreme Court and the Ohio Supreme Court have explained that the predominance requirement is readily met in civil rights and consumer cases, which challenge common practices.  See *Amchem*, 117 S.Ct. at 2246; and *Hamilton v. Ohio Savings Bank*, 694 N.E.2d 442 (Ohio 1998).

This case challenges Defendant's common business practices as described herein which, among other unlawful practices, consists of providing illusory credit disclosure, contracting consumers and then re-contracting them and failing to provide notices of adverse action after taking

prejudicial action against consumers. These practices create a common focus upon the nature and legality of this practice. Resolution of these common questions will determine the outcome of the case. If the practices alleged are not proven to exist, or are determined lawful, Defendant will be entitled to judgment and the controversy ended. If these practices are proven unlawful, all that will be left to complete the case would be the determination of damages under each statute. Common questions therefore predominate and (b)(3) certification is therefore appropriate. See *In Re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997). Resolving these determinative, core questions by means of a class action is obviously superior to available alternatives, including attempting to do so through a multitude of individual civil actions.  To the extent that any individual interest exists as to an individual class member, the "opt-out" process of Rule 23(b)(3) permits that interest to he protected within the framework of class certification.

Neither is this a case where litigation already commenced in other courts means that certification would adversely affect the class in other tribunals.  The class, this Court, and Defendant will all benefit from concentrating litigation on these issues in this forum. If that is not done, it is highly unlikely that more than a handful of class members will ever raise these claims on their own. Lack of sophistication, lack of resources, lack of representation and similar barriers are so great that few class members will have their day in court on these claims if not through a class action. Concentration of claims in this forum also aides this Court, since it assures that these issues will only have to be considered and resolved one time and in one case. Concentration benefits Defendant, since it may avoid the need to put on multiple defenses in different forums, avoid the possibility of inconsistent outcomes and assure a final and reliable resolution of these claims once and for all.

Finally, there is a strong presumption against denying class certification for case management

reasons. See *Buford v. H & R Block, Inc.*, 16$ F.R.D. 340 (S.D. Ga. 1996). This action will not be overly difficult to manage as a class. As noted above, the common questions of law and fact can and should be resolved for the class as a whole. Only in the event that Defendant is found liable under one or more of the claims for relief will there be any need to consider other questions. In that event, determination of damages hardly presents insurmountable case management problems.  The case management issues in this case are typical of the most mundane (b)(3) classes and are certainly far less difficult and costly to manage than the steps needed to resolve complex damage awards in mass tort complaints and similar cases which federal and Ohio courts have routinely certified under Rule 23(b)(3). See *Amchem*, *supra*; and *DeSario v. Industrial Excess Landfill, Inc.*, 587 N.E.2d 454 (Ohio App. 1991).  Any difficulty in managing these claims on a class-wide basis is far less than the difficulty this Court would face in determining liability and damages in multiple cases filed by hundreds of individuals who likely make up this class. As a result, this case is properly certifiable under Rule 23(b)(3).

### 6.    Adequacy of Representation.

Rule 23(a)(4) is satisfied when the named plaintiffs show that their interests are not antagonistic to the other members of the class and that the named plaintiffs are represented by counsel of sufficient diligence, experience and competence to vigorously litigate the class claims. Plaintiffs satisfied both these elements of the adequacy of representation test.

Moreover, the more important inquiry is the competence, experience, and ability of class counsel to vigorously prosecute the action.  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987).  In this instance, plaintiffs' counsel are experienced and fully qualified to represent the class.  Both of plaintiffs' counsel are particularly experienced in prosecuting consumer litigation.

Once the case is certified, additional class counsel will be added for discovery and class settlement purposes.

### 7.     The Conditions of Rule 23(b)(1) are Satisfied.

Rule 23(b)(1) provides that a claim may be maintained on behalf of a class if the court concludes that in addition to satisfying the prerequisites of Subsection (a), that:

> (1) The prosecution of separate claims or defenses by or against individual members of the class would create a risk of either:
>
>> (A) inconsistent or varying adjudication concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

The fact that the allegations of the complaint reveal the potential of numerous class members with precisely the same claims would certainly create the danger of inconsistent or varying adjudications concerning individual members of the class were these claims prosecuted or defended against separately.  Judges are individuals who may have different views regarding identical facts. Additionally, the adjudication of the claims of one class member would in practice be dispositive of the interests of the other members of the class who are not parties to that particular adjudication. The other members of the class who are not parties to the adjudication might find that the protection of their interests was substantially impaired by not participating in the adjudication.  Consequently, the certification of the Class can easily be maintained under Rule 23(b)(1) as well Rule 23(b)(3).

**8.  The Conditions of Rule 23(b)(2) are satisfied.**

This rule provides that a class claim may be maintained where "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate."

There can be no more appropriate a case than that in which the defendant has violated, is violating, and is otherwise likely to violate consumer protection statutes as the FCRA and the ECOA. "The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the members of the class." *Holmes v. Continental Can. Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983).

Every class member is situated the same: The defendant's illegal financing procedure was applied to them in an identical manner, including defendant's uniform disregard of TILA and the ECOA.

**9.  The Conditions of Rule 23(b)(3) are satisfied.**

In addition to meeting all the requirements of Rule 23(a) and (b), this action also satisfies Rule 23(b)(3), which provides that in order to certify a class, the questions of law or fact common to plaintiffs' claims and the claims of each class member should predominate over any question of law or fact affecting only individual class members, and that class representation is superior to other methods for the fair and efficient adjudication of this controversy. Rule 23 directs the trial court to base its conclusions as to these two elements upon "all relevant facts and circumstances" and further directs the court to consider the following factors in deciding that class certification is appropriate under Rule 23(b)(3):

> (i) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses;

(ii) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated;

(iii) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted; and

(iv) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.

## I.      FACTUAL BACKGROUND

**Plaintiff Givens:**

On April 5, 2010, plaintiff visited defendant to purchase and finance a used 2004 Cadillac Escalade.  Defendant agreed to sell and to finance the Escalade and prepared approximately 15 related forms and documents for plaintiff's agreement and signature.  The forms and documents included a credit application, purchase contract, title and registration forms, trade-in forms, and a retail installment sale contract (RISC).  Plaintiff signed as directed, and defendant delivered the Escalade to plaintiff.

Defendant later revoked the April 5 transaction, called plaintiff back to the dealership to sign a second purchase contract and RISC which plaintiff signed and again drove away with his Escalade.

The difference between RISC #1 and RISC #2 are:

a.      The Total Sale Price increased by $4,007, most of which the defendant took as additional profit;

b.      The finance charge on RISC #2 was calculated by defendant as $17,651.55 which is a $386.55 increase over the actual (and undisclosed) finance charge of $17,265. (Defendant's finance computer is programmed to falsely increase the finance charge, in this instance by 2.25%.)

- 18 -

After the April 5th RISC (RISC #1) was signed, defendant congratulated the plaintiff and told him that financing was approved and the Escalade was his to enjoy.  Defendant never told plaintiff that it had surreptitiously obtained his signature on a so-called "Conditional Delivery Agreement," never explained its purported significance, and never told plaintiff anything other than financing was approved.

**Plaintiff Mitchell:**

On October 4, 2010, plaintiff visited defendant to purchase and finance a used 2008 Chevrolet Cobalt.  Defendant agreed to sell and to finance the Cobalt and prepared approximately 15 related forms and documents for plaintiff's agreement and signature.  The forms and documents included a credit application, purchase contract, title and registration forms, and retail installment sale contract (RISC).  Plaintiff signed as directed ("sign here") and defendant delivered the Cobalt to plaintiff, telling her that financing was approved.

Days later defendant phoned plaintiff saying there was "something wrong" with the credit, that defendant was revoking credit to plaintiff Mitchell and said that her only choice was to obtain a cosigner or buy a different car with more miles on its odometer.

Plaintiff refused and, believing she had no other option and returned the Cobalt to defendant.

The defendant's procedure is virtually identical in every financing transaction ending with a signed credit contract and delivery of a motor vehicle purchased by the consumer.

The purchase-finance transaction beginning with a salesperson greeting the consumer, the test drive, lengthy discussions of price, options, extended warranty, insurance, the signing of 15 or more papers concluding with vehicle delivery is a charade, an act staged by the defendant and its employees.  The words and actions surrounding the transaction are designed to convince the

consumer that he or she has purchased and financed a vehicle. But the defendant secretly has no intention of honoring the contract. Rather, defendant intends only to take the unknowing consumers out of the market in the belief that their deal is complete. It is employed to prevent the consumer from going to another dealer. It is to prevent the consumer from shopping elsewhere for better credit terms. It is designed to secure time for the defendant to (1) locate a third-party who will buy the credit contract at full profit, or (2) decide whether to increase its profit by unilaterally revoking the credit contract and coercing the consumer into signing a second, more costly, credit contract.

### ARGUMENT - Certification Practice and Procedure

"[T]he very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist." *Tenney v. City of Miami Beach*, 152 Fla. 126, 128, 11 So.2d 188, 189 (1942). In *Tenney*, the Florida Supreme Court explained that the alternative to a class action is no real action at all, since "[t]o have required 232 separate suits here would have been prohibitive and ridiculous and would have deprived many of a remedy." *Id.* at 189.

"Rule 23 was intended to promote the efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgment." *Gottlieb v. Wiles*, 11 F.3d 1004, 1007 (10th Cir. 1993). See also *Donovan v. University of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981); *Rutherford v. United States*, 429 F.Supp. 506, 508 (Okla. 1977).

"[I]n a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992) quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985).

This is a prototypical case for class certification.  Prohibitive litigation costs effectively prevent individuals from filing complaints to recover their claims, and to require thousands of separate suits to recover the sums involved against defendant would result in an unnecessary multiplicity of suits or would result in no remedy at all as it would geometrically increase litigation expenses.

In this case, the complaint alleges a compelling case for class certification.  The procedure that caused injury to the plaintiffs and to the classes is the same for each of them.  The law is the same, the damage formula is the same, and the class as a whole is entitled to declaratory and injunctive relief.

## CONCLUSION

For all the foregoing reasons, plaintiffs respectfully request that this lawsuit be certified as a class action pursuant to Rule 23(a) and 23 (b)(1), (b)(2) or (b)(3) on behalf of the classes as defined herein.

WHEREFORE plaintiffs request the court to certify this action as a class action pursuant to Rule 23(b)(1), (b)(2), and/or (b)(3).

Respectfully submitted by:

/s/ THOMAS D. ROBENALT
Thomas D. Robenalt (Ohio Bar #0055960 )
Allen Tittle (Ohio Bar #0086590)
NOVAK ROBENALT & PAVLIK, LLP
Trial Attorney for Plaintiffs
Tower City Center
Skylight Office Tower - Suite 950
1660 West Second Street
Cleveland, OH 44113-1498
Telephone: (216) 781-8700
Facsimile: (216) 781-9227
Email:  ATittle@NRPlaw.com

- 21 -

and

_____    /s/**Raymond G. Ingalsbe**
                           Raymond G. Ingalsbe (Pro Hac Vice)
                           Raymond G. Ingalsbe, P.A.
                           Trial Attorney for Plaintiffs
                           4400 PGA Boulevard, Suite 800
                           Palm Beach Gardens, FL 33410
                           Telephone:  (561) 775-3505
                           Facsimile: (561) 624-3533 facsimile
                           Email:  RGIngalsbe@aol.com

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that on September 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                           /s/Raymond G. Ingalsbe_____
_____                    Raymond G. Ingalsbe

**SERVICE LIST**

Givens, et al v. Van Devere, Inc.

CASE NO.: 5:11-cv-00666

Merle D. Evans, III (#0019230)
Jude B. Streb (#0071529)
DAY KETTERER, LTD.
200 Market Avenue North, Suite 300
P.O. Box 24213
Canton, Ohio 44701-4213
Telephone (330) 455-0173
Facsimile (330) 455-2633
E-mail: mdevans@day-ketterer.com
jbstreb@day-ketterer.com
Counsel for Defendant, Van Devere, Inc.